**STATE of Missouri, Respondent,**

v.

**Valentino P. BARRAZA, Appellant.**

**No. WD 66963.**

Missouri Court of Appeals,
Western District.

Sept. 25, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 30, 2007.

Application for Transfer Denied
Dec. 18, 2007.

Ruth Sanders, Appellate Public Defender Office, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Shaun Mackelprang and Josh Corman, Office of Atty. Gen., Jefferson City, for Respondent.

RONALD R. HOLLIGER, Presiding Judge.

Valentino Barraza appeals his convictions, following a jury trial, for eight felonies, involving the killing of Adam Daniels and the wounding of Rodney Boyles when Barraza fired a gun into a car in which they were riding. The jury found Barraza guilty of the following: one count of murder in the second degree, Section 565.021.1 [1]; four counts of armed criminal action, Section 571.015; one count of assault in the first degree, Section 565.050; and two counts of unlawful use of a weapon, Section 571.030, RSMo Supp.2006. He raises three points on appeal. He first claims that there was insufficient evidence to prove both of his convictions for unlawful use of a weapon and its associated counts of armed criminal action and felony murder because the shooting of a weapon *into* a vehicle is not a class A felony of unlawful use of a weapon under section 571.030.1(9). His second point claims that one of his convictions for unlawful use of a weapon and its associated count of armed criminal action with regard to the wounding of Boyles subjected him to double jeopardy because the shooting of a bullet(s) constituted a single act. His third point claims that the State's evidence was insufficient to support a finding that his conviction for assault in the first degree rose to the level of a class A felony. We affirm.

**Factual and Procedural Background**

On March 5, 2005, Marvin Ruano was driving his Jeep Grand Cherokee with three passengers, when Barraza, who was standing on the street, fired an automatic weapon at the vehicle. With Ruano were Rodney Boyles in the front passenger's seat, Adam Daniels sitting behind Boyles, and Joshua Deperalta sitting directly behind Ruano. Daniels was killed, and Boyles was shot in the left arm.

Earlier that day, as Ruano was driving to pick up his friends, another Jeep drove by and the driver, Thomas, said to him, "You shot my boy." Thomas was referring to the death of Dominic Hernandez the previous September. Apparently Barraza had been telling Dominic's cousins that Ruano killed him. Following that confrontation, Ruano gathered Daniels, Boyles, and Deperalta, and drove to 13th and Ewing in Kansas City, where they believed Thomas and his friends were. Deperalta wanted to tell Barraza to leave them alone because Ruano had nothing to do with Dominic's death.

When Ruano arrived at 13th and Ewing, he saw a group of people standing in the street near a Pontiac Bonneville with its trunk opened. As Ruano drove past the Bonneville, Deperalta saw Barraza reach into the trunk for an assault rifle. Someone in the Jeep yelled, "He's got a gun." Barraza said, "What's up" in a threatening manner, and walking into the middle of the street, he began firing at Ruano's Jeep. As Barraza fired, someone else fired a handgun at the Jeep. Boyles heard eight or nine gunshots in addition to the handgun. The first shot shattered the back window, exiting through the front of the vehicle. Noticing that Daniels was hit, Deperalta pulled him to the floorboard. Boyles was shot in his left arm. As the shots hit the Jeep, the engine died and it rolled downhill for a block before stopping. As the Jeep coasted, Boyles grabbed a .22 caliber revolver from underneath the passenger's seat and returned fire.

---

**1.** All statutory references are to Missouri Revised Statutes, 2000, unless otherwise indicated.

When the Jeep came to a rest, Ruano, Boyles, and Deperalta ran from the vehicle, believing the shooters were following. When they realized Daniels was not with them, Ruano and Deperalta returned to the Jeep and found him lying in the back seat. Boyles left to hide the .22 caliber revolver and then went to a bar seeking assistance for his bleeding arm. According to the medical examiner, Daniels died from a gunshot wound to the left side of his back, which shattered a rib, causing excessive bleeding and a collapsed lung.

One of the crime scene technicians (CST) testified that she found a bullet hole in the tailgate to the right of the license plate. Glass from the front and rear left windows was shattered, and the rear left tire was flat. The CST collected bullets from the left side of the front dash, the front right floorboard, and the front right seat. A second CST placed trajectory rods through the bullet holes. The bullet that entered through the tailgate continued through the right side of the backseat where Daniels was sitting and through the left side of the front passenger's seat where Boyles was sitting. A second trajectory rod showed that a bullet entered the rear cargo window of the vehicle and continued through the interior post between the window and the right side passenger door. Another bullet grazed the rear right cargo window, never penetrating the Jeep. A criminalist from the city crime laboratory recovered ten cartridge casings likely from an AK–47 style rifle. He found seven of them similar enough to have come from the same gun. The remaining three were too damaged to identify.

A jury convicted Barraza for the following offenses: Count I, murder in the second degree; Count II, armed criminal action; Count III, assault in the first degree; Count IV, armed criminal action; Count V,

unlawful use of a weapon; Count VI, armed criminal action; Count VII, unlawful use of a weapon; and Count VIII, armed criminal action. Barraza was sentenced to fifty years imprisonment: thirty years for Counts I and II to run concurrently and twenty more years for the remaining counts to run concurrently. This appeal follows.

## Discussion

### I. Section 571.030.1(9) is Not Ambiguous and there is Sufficient Evidence to Support the Conviction

In his first point on appeal, Barraza claims that the trial court erred when it entered judgments of conviction and sentenced him for the counts of unlawful use of a weapon and the associated counts of felony murder and armed criminal action. Barraza claims that the error violated his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and article I, sections 10 and 18(a) of the Missouri Constitution were violated because section 571.030.1(9) is ambiguously worded. Specifically, Barraza argues that once the legislatively intended meaning of the statute is revealed, the evidence presented at trial will have been insufficient to support his conviction. Unlawful use of a weapon can be charged as a class A felony only if charged under subdivision 9 of section 571.030.1. Subdivision 9 makes it illegal if a person knowingly

> Discharges or shoots a firearm *at or from a motor vehicle,* as defined in section 301.010 RSMo, discharges or shoots a firearm at any person, *or at any other motor vehicle,* or at any building or habitable structure, unless the person was lawfully acting in self-defense.

Section 571.030.1(9) (emphasis added).

■ Barraza disputes the meaning of section 571.030.1(9), which is a question of

statutory interpretation. He contends that the statutory language is ambiguous as to whether it covers discharging a firearm between two vehicles, from a vehicle or also toward a vehicle but not from another vehicle. Statutory interpretation is purely a question of law, which this court reviews *de novo*. *State v. Gibson,* 122 S.W.3d 121, 126 (Mo.App. W.D.2003).

"The primary rule of statutory interpretation is to effectuate legislative intent through reference to the plain and ordinary meaning of the statutory language." *State v. Graham,* 204 S.W.3d 655, 656 (Mo. banc 2006). The Court is particularly concerned with " 'whether the language is plain and clear to a person of ordinary intelligence.' " *State v. Daniel,* 103 S.W.3d 822, 826 (Mo.App. W.D.2003) (quoting *State v. Goddard,* 34 S.W.3d 436, 438 (Mo.App. W.D.2000)). A statute is ambiguous if the language is subject to more than one reasonable interpretation. *Graham,* 204 S.W.3d at 656. " 'Where the statutory language is unambiguous, we need not resort to statutory construction and must give effect to the statute as written.' " *State v. Graham,* 149 S.W.3d 465, 467 (Mo.App. E.D.2004) (quoting *Daniel,* 103 S.W.3d at 826).

Barraza argues that the statute has two possible meanings, making it ambiguous. He believes that the statute could be read to prohibit shooting "from" a motor vehicle toward a person, another motor vehicle, or a building. The second interpretation, according to Barraza, is that the statute prohibits a series of single acts including shooting "at or from" a motor vehicle, or "at" a person, other motor vehicle, or a building. He claims that both of these interpretations involve ignoring some of the statutory language, either "at or from" a motor vehicle, or "any other" motor vehicle. He argues that under the rule of lenity, an ambiguity must be construed against the State. *See Graham,* 204 S.W.3d at 656. Barraza then advocates applying the rules of statutory construction, leading him to the conclusion that the legislature's intent was to prohibit gang-related drive-by shootings. Therefore, Barraza believes that the statute should be read as only criminalizing shooting "from" a motor vehicle.

The plain and ordinary meaning of the statute prohibits shooting at a motor vehicle, at any person, or at any building *or* shooting from a motor vehicle at any person, or at any other motor vehicle, or at any building. Barraza believes that because it is possible to read the statute to prohibit shooting at a motor vehicle or "at any other motor vehicle," the statute is ambiguous. This argument conflates redundancy with ambiguity. The two are not the same. *See Foremost–McKesson, Inc. v. Davis,* 488 S.W.2d 193, 201 (Mo. banc 1972) (finding that mere redundancy in the language of the two regulations does not justify finding them vague and ambiguous).

We do not find the language ambiguous. Although perhaps not a model of draftsmanship, the statute prohibits shooting at a motor vehicle, from a motor vehicle at any other person, building or habitable structure, or from one vehicle at another vehicle. It clearly makes a class A felony the conduct for which Barraza was convicted. Rules of statutory construction should not be used to create an ambiguity where none exists. Barraza makes no claim that the evidence was insufficient to support his conviction for firing a weapon from the street at a vehicle. This point is denied.

## II. Conviction for Two Counts of Unlawful Use of a Weapon Did Not Subject Barraza to Double Jeopardy

In his second point on appeal, Barraza claims that the trial court plainly erred in

entering judgments of conviction and sentencing him for Count VII, unlawful use of a weapon, and Count VIII, armed criminal action (involving victim Boyles). He asserts that these convictions subjected him to multiple punishments for the same offenses as Count V, unlawful use of a weapon, and Count VI, armed criminal action (the death of Adam Daniels). He claims that this error subjected him to double jeopardy and violated the rights guaranteed to him by the Fifth and Fourteenth Amendments to the United States Constitution.

■■■■ Claims of double jeopardy are questions of law reviewed *de novo. State v. Werner*, 9 S.W.3d 590, 595 (Mo. banc 2000). However, Barraza concedes that this claim was not preserved for appeal and therefore seeks plain error review. Under Supreme Court Rule 30.20 plain error review is discretionary and will only be granted when the alleged error will so substantially affect an appellant's rights that a manifest injustice or a miscarriage of justice results if left uncorrected. *State v. Scurlock*, 998 S.W.2d 578, 585–86 (Mo. App. W.D.1999). The appellant seeking plain error review bears the burden of demonstrating a manifest injustice or miscarriage of justice. *State v. Isa*, 850 S.W.2d 876, 884 (Mo. banc 1993). The Missouri Supreme Court has observed that, on direct appeal, a manifest injustice or miscarriage of justice exists so as to entitle a defendant to relief for plain error only when the error is outcome determinative. *Deck v. State*, 68 S.W.3d 418, 427 (Mo. banc 2002). The State contends that plain error review is not proper because double jeopardy is a personal privilege and is waived if not properly raised. *State v. Todd*, 70 S.W.3d 509, 529 (Mo.App. W.D. 2002). Barraza argues that an exception applies under *State v. Elliott*, 987 S.W.2d 418, 421 (Mo.App. W.D.1999). Without de-

ciding the question we find that no plain error occurred.

■■■■ The Fifth Amendment to the United States Constitution states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. States must honor this protection since the provision has been incorporated through the Fourteenth Amendment Due Process Clause. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

■■■■ The Double Jeopardy Clause prohibits three abuses: " '(1) a subsequent prosecution for the same offense after acquittal; (2) a subsequent prosecution for the same offense after conviction; and (3) multiple punishments for the same offense.' " *State v. Mullenix*, 73 S.W.3d 32, 34–35 (Mo.App. W.D.2002) (quoting *State v. Mayo*, 915 S.W.2d 758, 759 (Mo. banc 1996)). Barraza claims that the State violated the prohibition against multiple punishments.

■■■■ "Where multiple punishments are imposed following a single trial, double jeopardy analysis is limited to determining whether multiple punishments were intended by the legislature." *State v. Sanchez*, 186 S.W.3d 260, 266–67 (Mo. banc 2006). If the defendant has "in law and fact committed separate crimes," multiple punishments are allowed. *Id.* at 267. The court looks to the allowable "unit of prosecution" by the charging statute to determine whether the legislature intended multiple punishments. *Id.*

Citing the prosecution's closing statement, Barraza claims that the State proved that only one bullet injured Boyles and killed Daniels:

The spent casings and that direct shot into the back of the Jeep, the one that killed Adam Daniels, and if you look at

that bullet and the directional rods, that's a rifle bullet. It went clear through the tailgate, clear thorough the seat, clear through young Adam Daniels, clear through the arm of Rodney Boyles, spent all of its energy, and it falls right there on the right front floor mat, and as the expert Michael Ward said, that's a rifle round.

Barraza's argument is that the legislature intended a single shot to be the unit of prosecution in a violation of section 571.030.1(9), and that because the State proved that only one shot injured Boyles and killed Daniels, he can be convicted only once for unlawful use of a weapon and the corresponding charge of armed criminal action. Barraza cites two cases to make his argument that the legislature intended a single shot to be the unit of prosecution under section 571.030.1(9). *See Yates v. State,* 158 S.W.3d 798, 801–02 (Mo.App. E.D.2005); *State v. Morrow,* 888 S.W.2d 387, 392 (Mo.App. S.D.1994). *Morrow* involved conviction on two counts for firing twice "into a dwelling house." The *Morrow* court held that "the legislative intent, in defining the offense proscribed in section 571.030.1(3), was to make each firing of the firearm an allowable unit of prosecution and that separate convictions [for two gunshots], and separate punishments therefor, [sic] did not infringe defendant's rights under the Double Jeopardy Clause." *Morrow,* 888 S.W.2d at 393. The *Yates* court expanded this logic to subsection (9) of the same statute. But, neither of these involved the injury or death of a victim.

■ Violation of section 571.030.1(9) is raised from a class D to a class A felony if it "results in injury or death to another person." Section 571.030.7. Barraza's counts of unlawful use of a weapon were charged as class A felonies under the theory of accomplice liability. This meant that the State had to prove (once each for Boyles and Daniels): (1) that Barraza or another person knowingly shot a firearm at a motor vehicle, and (2) that as a result of this conduct, [the victim] suffered injury or death. As the U.S. Supreme Court held in *Blockburger,* "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. U.S.,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

■ This court does not need to reach the issue of whether the State proved that only one bullet injured Boyles and killed Daniels, since both counts of unlawful use of a weapon required proof of a separate element. Because Counts V and VII required "proof of a fact which the other [did] not," they were separate offenses. See *State v. Thompson,* 147 S.W.3d 150, 160 (Mo.App. S.D.2004) (negligent operation of a motor vehicle justified two convictions because there were two victims). There were two victims here regardless of whether one shot or different shots (the evidence was not clear) caused both the death and the injury. The trial court did not plainly err in entering judgments of conviction against Barraza for Counts V, VI, VII, and VIII. No manifest injustice has occurred. This point is denied.

## III. There is Sufficient Evidence to Support the Assault Conviction

■ In his final point on appeal, Barraza claims that the trial court erred in entering judgment against him for assault in the first degree as a class A felony and for the associated charge of armed criminal action. Barraza claims that the error violated his rights to due process and a fair trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and article I, sec-

tions 10 and 18(a) of the Missouri Constitution. While Barraza concedes that the evidence presented at trial was sufficient to maintain a conviction of assault in the first degree as a class B felony, he claims that the evidence was insufficient to reach the level of a class A felony.

"In reviewing a challenge to the sufficiency of the evidence, appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989). The reviewing court accepts as true all of the evidence favorable to the State, including all favorable inferences drawn from the evidence, and disregards all evidence and inferences to the contrary. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993), *cert. denied*, 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993).

"A person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." Section 565.050.1. Assault in the first degree rises to the level of a class A felony if it results in serious physical injury to the victim. Section 565.050.2. " 'Serious physical injury' ... creates a substantial risk of death or ... causes serious disfigurement or protracted loss or impairment of the function of any part of the body." Section 565.002(6).

The State does not argue that Boyles' injury resulted in a substantial risk of death or serious disfigurement. Therefore, this appeal centers on whether sufficient evidence was presented that Boyles suffered a physical injury causing protracted loss or impairment of the function of any part of the body. Protracted impairment is " 'something short of permanent but more than of short duration.' " *State v. Westerman*, 971 S.W.2d 932, 934 (Mo.App.

W.D.1998) (quoting *State v. Trimmer*, 849 S.W.2d 725, 728 (Mo.App.1993)). " 'There is no minimum degree of trauma that must be inflicted to satisfy the portion of the statutory definition dealing with protracted loss or impairment.' " *Id.* (quoting *State v. Ross*, 939 S.W.2d 15, 18 (Mo.App.1997)). "Protracted impairment" concerns the temporal aspect of the injury. *Daniel*, 103 S.W.3d at 827–28. The possibility that a person suffered "serious physical injury" is not eliminated by the fact that he or she recovers from the injury without residual damage. *Id.* at 828. "Whether an injury constitutes protracted impairment depends on the circumstances of each case." *Id.* (quoting *Ross*, 939 S.W.2d at 18).

At trial, one year after the assault, Boyles testified that a bullet went through his left arm, causing it to bleed "real bad." Following is his direct examination by the prosecutor:

Q Describe for the jury where you were hit.

A I was hit right here, in my bicep right here, and it went all the way through.

Q In your left arm?

A Yeah.

Q And it came thru?

. . . .

A Yes.

Q All right. Did you have to go to the hospital for that?

A Yes.

Q Okay. And how long were you treated there?

A I was in there for, like, an hour.

Q And it was a through-and-through wound and no bullet to take out?

A Yeah.

Q Do you still have any permanent injury from this?

A Yeah, nerve damage and cramping in my arm.

Q Cramping in your arm?

A Yeah.

Q Does that inhibit your use of the arm?

A Sometimes, not all the time.

Q It depends?

A Yeah.

Both parties cite *State v. Baker,* a case explaining when a physical injury causes protracted loss or impairment of the function of any part of the body. *See State v. Baker,* 859 S.W.2d 805, 813 (Mo.App. E.D. 1993). *Baker* distinguishes two assault victims' injuries—one that resulted in protracted impairment and one that did not. The first victim was shot in the shoulder and at trial eleven months later, when asked by the prosecutor if he had "any problems today," he answered "stiffness." *Id.* The court believed that the jury could fairly infer from the victim's testimony that protracted stiffness in the shoulder constituted an impairment of the shoulder's function. *Id.* Finding stiffness to be commonly understood as a condition experienced upon movement and not at rest, the court held that an injury producing continual "stiffness in the shoulder can properly be characterized as an injury that causes 'protracted ... impairment of the function' of a part of the body." *Id.* The second victim was shot in the calf and testified that "[w]hen it's cold or rainy, I get aches." *Id.* The court stated that the evidence was insufficient to elevate the assault charge to a class A felony upon finding "no indication that the aches are either affected by movement or standing or that the aches ... make moving or standing ... more difficult." *Id.*

Boyles' injury is more analogous to that of the first victim's stiff shoulder in *Baker.* Not only did Boyles complain of perma-

nent nerve damage and cramping in his arm, he also testified that both of these permanent injuries sometimes inhibited the use of his arm. Inhibited use of one's arm is impairment of the function of one's arm. Therefore, a jury could infer from Boyles' testimony that he suffered protracted impairment of the function of his arm. This point is denied.

### Conclusion

For the aforementioned reasons, the judgment of the trial court is affirmed.

HAROLD L. LOWENSTEIN, Judge, and JAMES M. SMART, Jr., Judge, concur.