**STATE of Missouri, Respondent,**

v.

**Alphonso William HAMILTON, Appellant.**

**No. WD 70790.**

Missouri Court of Appeals, Western District.

Dec. 14, 2010.

Alexa I. Pearson, Columbia, MO, for Appellant.

Chris Koster, Jefferson City, MO, for Respondent.

Before KAREN KING MITCHELL, P.J., JAMES EDWARD WELSH, and MARK D. PFEIFFER, JJ.

JAMES EDWARD WELSH, Judge.

Alphonso William Hamilton appeals the circuit court's judgment convicting him of domestic assault in the third degree, resisting arrest, and assaulting a law enforcement officer. He claims that the circuit court erred in enhancing his domestic assault conviction from a class A misdemeanor to a class D felony because he did not have the requisite number of prior convictions for enhancement. He also claims that the circuit court plainly erred in not ordering a mistrial *sua sponte* when the State, during its closing argument, commented upon his failure to produce witnesses. We affirm.

The sufficiency of the evidence to support Hamilton's convictions is not in dispute. The evidence, in the light most favorable to the judgment, established that Hamilton and the victim, K.K., had been living together for two years as of June 14, 2008. On that day, K.K. went to work while Hamilton went to a large party at his cousin's house. Hamilton arrived at the party at about 11:00 a.m. and began drinking beer shortly thereafter.

After K.K. got off work that evening, she met Hamilton at the party at about 7:30 p.m. Hamilton gave K.K. twenty dollars. A couple of hours later, K.K. noticed that Hamilton was flirting with another woman. K.K. was uncomfortable and upset by Hamilton's behavior, so she told Hamilton that she was going home. After K.K. got into her car, Hamilton yelled at her, got into the car with her, and told her, "Okay. We'll just go home."

On the way home, Hamilton said that he wanted to go back to the party. K.K. refused to drive him back to the party and told him that if he wanted to go back, he could find his own ride. Hamilton became upset and started yelling at her.

When they arrived home, K.K. went into their bedroom and began to pack Hamilton's things because she was tired and "fed up" with their relationship. Hamilton came into the bedroom and turned off the lights. Hamilton then grabbed K.K. from behind, threw her on the bed, and continuously punched her in her face with his closed fist for five to ten minutes. K.K.'s nose started bleeding.

After Hamilton stopped hitting K.K., he told her to give him back his twenty dollars. K.K. got up and went to another room to find her purse. At first, she could not find the money, so Hamilton told her to go look in her car for it. Before K.K. went to her car, she saw her car keys lying on the floor by her feet. Thinking that

she could just drive away when she went to her car to look for Hamilton's money, K.K. reached down and tried to pick up the keys. Hamilton grabbed the keys before she could reach them. He then threw K.K. up against the kitchen counter and said, "How dare you try to leave." Hamilton hit K.K. a few more times in her face with his closed fist. When he stopped hitting her, K.K. went to the car but did not find the money. She came back in the house, found the twenty dollars, and gave it to Hamilton. Hamilton took K.K.'s car keys and, as he was leaving, told her that if she wanted her car, she would have to find him. Hamilton left but did not take K.K.'s car.

After Hamilton left, K.K. went to her neighbor's home. The neighbor had already called the police. K.K.'s eyes were swollen almost completely shut, and her lip and cheeks were swollen. Her lip was also cut. She had big bumps on both sides of her forehead, bruises on her forehead, scratches on her face, and a bloody nose. When the police arrived, they photographed K.K.'s injuries and took her statement about the incident.

Meanwhile, Officer Sean Dutton and Sergeant Chris Kelley were dispatched to arrest Hamilton. Dutton and Kelley went to the party at Hamilton's cousin's house and found Hamilton there. The officers asked Hamilton what happened at his and K.K.'s house earlier in the evening. Hamilton said that he was never at his house and that he had been at the party the whole night. Dutton told Hamilton that he was under arrest. As Dutton was handcuffing Hamilton, Hamilton said, "This is bullshit." Hamilton also told Dutton that there were "500 witnesses" who could tell the officers that he had been at the party all night.

As Dutton walked Hamilton to the police car, Hamilton pulled away from Dutton, turned around, and kicked Dutton in the groin. When some of the people from the party began to approach the officers and Hamilton, Kelley focused on keeping the crowd back while Dutton tried to get Hamilton under control. As the crowd began to get agitated, Dutton and Kelley became concerned for their safety.

Dutton eventually got Hamilton on the ground and instructed him to stop resisting arrest. Hamilton yelled and cursed at Dutton. Dutton assisted Hamilton in standing up and escorted him to the patrol car. As they were walking to the car, Hamilton told Dutton that, if he had had a gun, he would have shot Dutton when he saw Dutton approaching. Hamilton also told Dutton that, if he saw Dutton on the street, he would shoot him. At one point, Hamilton told Dutton that he would assault Dutton if he saw him and that Dutton could quote him on that. Twice, Hamilton tried to spit on Dutton. Much of Hamilton's interaction with Dutton was recorded by Dutton's body microphone.

The State subsequently charged Hamilton with the class D felony of domestic assault in the third degree, in violation of section 565.074, RSMo 2000; the class A misdemeanor of resisting arrest, in violation of section 575.150, RSMo Cum.Supp. 2008; and the class A misdemeanor of assault of a law enforcement officer in the third degree, in violation of section 565.083, RSMo Cum.Supp.2008.

While Hamilton was in jail awaiting trial on these charges, he wrote K.K. a letter in which he told her:

> I know you are scared of me as well, and you want me out of your life as much as you still want me. At least I hope so.... [K.K.] I don't deserve you anymore. But I'm willing to do anything to salvage some kind of relationship.... I'm so sorry [K.K.]. And I truly believe that after all we've been through I de-

serve another chance. I will do individual counceling [sic] and hopefully you would go to couples therapy with me.... I know you're still mad at me or probly [sic] hate me. But there's got to be some love hideing [sic] in your heart.... I've said it enough. I fucked up. But we can make it work. I won't hold anything over your head. I put myself in hear [sic].... I hope you have it in your heart to still love me and forgive me.

A jury trial was held in February 2009. The jury found Hamilton guilty on all three charges. The court sentenced Hamilton to concurrent terms of three years imprisonment for domestic assault, six months in jail for resisting arrest, and six months in jail for assaulting a law enforcement officer. Hamilton appeals.

■ In his first point, Hamilton claims that the circuit court erred in enhancing his third-degree domestic assault conviction from a class A misdemeanor to a class D felony because he did not have the requisite number of prior convictions for enhancement under section 565.074.3. He argues that section 565.074.3 is ambiguous as to whether it requires two or three prior convictions for enhancement. Hamilton asserts that, pursuant to the rule of lenity, the court should have interpreted the statute to require the State to prove that he had three prior domestic assault convictions. Because the State proved only that he had two prior convictions, Hamilton argues that the court should not have enhanced the offense from a misdemeanor to a felony. Hamilton did not raise this claim in the circuit court; hence, review, if any, would be for plain error.

■ Review for plain error under Rule 30.20 involves a two-step process. *State v. Brink*, 218 S.W.3d 440, 448 (Mo. App.2006). First, we must determine whether the claim on its face establishes substantial grounds to find that manifest injustice or miscarriage of justice has resulted. *Id.* "Errors are plain if they are evident, obvious, and clear." *Id.* "In the absence of such error, we should decline to exercise our discretion to review the claimed error under Rule 30.20." *Id.* "If we find plain error on the face of the claim, we may proceed, at our discretion, to the second step to consider whether or not a miscarriage of justice or manifest injustice will occur if the error is left uncorrected." *Id.* If the circuit court improperly enhanced a sentence, a manifest injustice has occurred, and plain error review is appropriate. *State v. Dixon*, 24 S.W.3d 247, 250 (Mo.App.2000). We, therefore, exercise the discretion granted to us by Rule 30.20 to consider as plain error Hamilton's claim that the court improperly interpreted section 565.047.3 to enhance his third-degree domestic assault conviction from a misdemeanor to a felony.

■ The interpretation of a statute is a question of law, which this court reviews *de novo*. *State v. Barraza*, 238 S.W.3d 187, 192 (Mo.App.2007). " 'The primary rule of statutory interpretation is to effectuate legislative intent through reference to the plain and ordinary meaning of the statutory language.' " *Id.* (quoting *State v. Graham*, 204 S.W.3d 655, 656 (Mo. banc 2006)). " 'To determine whether a statute is clear and unambiguous, this court looks to whether the language is plain and clear to a person of ordinary intelligence.' " *State v. Goddard*, 34 S.W.3d 436, 438 (Mo. App.2000) (citation omitted). If the language of the statute is open to more than one reasonable interpretation, then the statute is ambiguous. *Barraza*, 238 S.W.3d at 192. " 'Where the statutory language is unambiguous, we need not resort to statutory construction and must give effect to the statute as written.' " *State v.*

*Graham,* 149 S.W.3d 465, 467 (Mo.App. 2004) (citation omitted).

Section 565.074 defines the crime of domestic assault in the third degree. Subsection 2 of section 565.074 says that the crime is ordinarily a class A misdemeanor. However, when the defendant is a repeat offender, subsection 3 of the statute provides for enhancement under these circumstances:

> A person who has pleaded guilty to or been found guilty of the crime of domestic assault in the third degree more than two times against any family or household member as defined in section 455.010, RSMo, is guilty of a class D felony for the third or any subsequent commission of the crime of domestic assault. The offenses described in this subsection may be against the same family or household member or against different family or household members.

§ 565.074.3.

The information charging Hamilton with the class D felony of third-degree domestic assault alleged that Hamilton had pleaded guilty to third-degree domestic assault in August 2001 and again in October 2004. Before trial, the State offered the certified records of these other domestic assault convictions. The court received the records without objection and determined that Hamilton had been found guilty of third-degree domestic assault on these two occasions. After the jury found Hamilton guilty of third-degree domestic assault for the incident involving K.K., the court noted in its judgment that this was Hamilton's third offense. Therefore, the court found that Hamilton's conviction for this offense was a class D felony and sentenced him accordingly.

Hamilton contends that the circuit court plainly erred in enhancing the offense to a class D felony because he did not have "more than two" prior convictions for third-degree domestic assault before his conviction for the incident involving K.K. He argues that the first sentence of section 565.074.3 contains conflicting provisions. Specifically, Hamilton claims that the first part of the sentence requires proof of "more than two" prior convictions for third-degree domestic assault, while the second part of the sentence provides for enhancement for "the third or any subsequent commission of the crime of domestic assault." Hamilton contends that the second part of the sentence providing for enhancement upon a "third" offense cannot be applicable when the first part of the sentence requires the State to prove "more than two" prior convictions. Thus, he argues, the provisions conflict and are patently ambiguous. Hamilton asserts that, under these circumstances, we must apply the rule of lenity, construe the statute against the State, and find that he was not subject to enhancement because he did not have at least three prior convictions before his present conviction. We disagree.

In interpreting section 565.074.3, Hamilton adds a word and creates an ambiguity where none would otherwise exist. The plain language of the statute does not require that a defendant have more than two *prior* convictions. Rather, the statute provides for enhancement if the defendant has pleaded guilty to or been found guilty of the crime of third-degree domestic assault "more than two times." § 565.074.3. The word "prior" is not in the statute. Nothing in the statute excludes the guilty plea or finding of guilt for the offense that is presently before the court from consideration when determining whether the defendant has pleaded guilty or been found guilty "more than two times." Moreover, the rest of the statute clearly indicates that the legislature intended that a defendant be sentenced as a class D felon for

the "third or any subsequent commission" of the crime, which would include the offense that is presently before the court. Reading section 565.074.3 as it is written, and without Hamilton's insertion of the word "prior," we find that the phrases "more than two times" and "third or any subsequent commission" do not conflict and clearly provide for enhancing the defendant's sentence for his third domestic assault in the third degree conviction.

Because the meaning of section 565.074.3 is plain and clear, we need not resort to the rule of lenity or any other rule of statutory construction. Hamilton pleaded guilty to or was found guilty of the crime of third-degree domestic assault more than two times: in August 2001, in October 2004, and in the present case involving K.K. Therefore, the court properly found that, for the present case involving K.K.—his third commission of the offense—Hamilton was guilty of a class D felony, and the court sentenced him accordingly. We find no error, plain or otherwise. Therefore, we deny Hamilton's first point.

■ In his second point, Hamilton claims that the circuit court plainly erred in not ordering a mistrial *sua sponte* when the State, during its closing argument, commented upon his failure to produce witnesses. One of Hamilton's defense theories was that the police officers who arrested him did not ask any of the witnesses at the party whether or not he had been there all night but, instead, jumped to the conclusion that K.K. was telling the truth about the incident. During Hamilton's closing argument, defense counsel repeatedly stated that Hamilton tried to get the officers to talk to the witnesses at the party who would have confirmed his claim that he never left the party that night, but the officers refused. Defense counsel argued that, if the officers would have talked to some of the witnesses, they "probably would have not had to arrest Alphonso Hamilton." Defense counsel also told the jury that he "let Mr. Hamilton down" by not finding these witnesses and having them testify.

In the State's rebuttal argument, the prosecutor responded to defense counsel's argument, saying, "And I'm going to leave you with this. The bottom line is, they can blame the officers for not interviewing people and they can say that [K.K.] made this up. But you want to know what? These are his family and friends. Where are they?" Hamilton did not object to this argument during the trial or in his motion for new trial. He asks for plain error review.

■ " 'Statements made in closing argument rarely constitute plain error.' " *State v. Baumruk*, 280 S.W.3d 600, 618 (Mo. banc), *cert. denied*, —— U.S. ——, 130 S.Ct. 144, 175 L.Ed.2d 93 (2009) (citation omitted). This is because, without an objection, the circuit court's "options are narrowed to uninvited interference with summation, which may itself constitute error." *Id.* "Under plain error review, a conviction will be reversed for improper closing argument only when it is established that the argument had a decisive effect on the outcome of the trial and amounts to manifest injustice." *State v. Deck*, 303 S.W.3d 527, 541 (Mo. banc 2010). Hamilton has the burden of proving that the allegedly improper argument had a decisive effect. *Id.* "An argument has a decisive effect when it is reasonably probable that, absent the argument, the verdict would have been different." *Baumruk*, 280 S.W.3d at 618.

We need not decide the propriety of the prosecutor's argument in this case because Hamilton fails to show that it had a decisive effect on the jury's verdict. The evidence against Hamilton was overwhelming. K.K.'s testimony that Hamilton repeatedly

punched her in the face and the pictures showing her injuries established that he was guilty of third-degree domestic assault. Hamilton's letter to K.K. acknowledging that she was afraid of him, apologizing to her, and admitting that he put himself in jail refuted his claim that K.K. was falsely accusing him. The testimonies of Dutton and Kelley, combined with the recording from Dutton's body microphone, established that Hamilton was guilty of resisting arrest and assaulting a law enforcement officer. Because the evidence against Hamilton was overwhelming, we fail to see how the prosecutor's isolated comment had a decisive effect on the jury's verdict.[1] The circuit court did not plainly err in not ordering a mistrial *sua sponte.* We deny Hamilton's second point.

We, therefore, affirm Hamilton's convictions and sentences.

All concur.

1. Hamilton appears to argue that he suffered manifest injustice because the prosecutor's comment compounded the prejudice that he suffered as a result of defense counsel's failure to call witnesses from the party to testify on his behalf. Essentially, Hamilton is asking us to conclude that defense counsel was ineffective. An ineffective assistance of counsel claim is not cognizable in a direct appeal. *State v. Motley,* 56 S.W.3d 482, 484 n. 1 (Mo.App.2001).