

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD83755 |
| | ) | |
| v. | ) | OPINION FILED: July 6, 2021 |
| | ) | |
| THEAUN ROMAINE HARDRIDGE, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Lafayette County, Missouri**
The Honorable Dennis A. Rolf, Judge

Before Special Division: Zel M. Fischer, Special Judge, Presiding, Cynthia L. Martin, Chief Judge, and Gary D. Witt, Judge

Theaun Hardridge ("Hardridge") appeals the judgment of the Circuit Court of Lafayette County, Missouri ("trial court"), finding him guilty of one count of assault in the second degree, section 565.052[1], one count of unlawful use of a weapon, section 571.030.1(9), one count of unlawful use of a weapon, section 571.030(4), two counts of armed criminal action, section 571.015, and one count of resisting a lawful stop, section 575.150. On appeal, Hardridge argues that section 571.030.1(9) is ambiguous, and that his

---

[1] All statutory references are to RSMo. 2016, as updated by supplement.

charge for unlawful use of a weapon pursuant to that subsection was improper. Hardridge also argues that the trial court plainly erred by admitting evidence at his sentencing hearing of his bad conduct while Hardridge was in jail awaiting trial. We affirm the judgment of the trial court.

**Factual and Procedural Background**

Brandon Glidewell ("Glidewell") lived in Higginsville, Missouri, in March of 2019. Glidewell worked at a gas station, but he would also buy and sell shoes and clothing using Facebook Marketplace. Glidewell met Hardridge on Facebook and had arranged to meet Hardridge at Seventh Heaven, a convenience store in Higginsville, to sell him clothing and shoes. They chose that location because it was one of the few businesses open after midnight, when Hardridge wanted to meet. Glidewell went to the convenience store alone, and Hardridge was already there when he arrived. Another car was parked near the gas pumps, and Glidewell knew the driver of the third car; he and the other driver nodded to each other.

Hardridge approached Glidewell's vehicle and opened the passenger side door, standing between the open door and the vehicle and leaning in. Glidewell saw that Hardridge was holding a gun. Hardridge saw Glidewell and the third driver nod at each other, and accused Glidewell of planning to rob him. Hardridge told Glidewell that he was going to "air it out," which Glidewell took to mean that Hardridge was going to shoot either him or the third driver. Glidewell told Hardridge to just take the clothes and leave.

At about that time, Donald Hinson ("Witness"), who lived nearby, was walking to the convenience store to get cigarettes and coffee. Witness saw Hardridge leaning into

2

Glidewell's car, and the two were arguing. Witness heard Glidewell say "Somebody is coming," and, when Hardridge stood and looked up, Glidewell sped off, almost hitting Witness. Hardridge then fired two shots at Glidewell's car "between [Witness] and the car." Witness managed to get out of the way, and Hardridge got back into the passenger seat of the pick-up truck he arrived in and left. Jared Willingham ("Willingham") was the driver of the pick-up.

When Glidewell was speeding away from the convenience store, he heard the two shots and felt the bullets hit his car. He found a bullet in the front passenger seat of his car when he got home. When Higginsville police arrived, an officer observed two bullet holes in Glidewell's trunk. A later, more thorough search of the vehicle revealed bullet fragments of one bullet trapped in the framework of the trunk, with the other bullet having passed through the trunk and the back seat, continuing through the front seat area to damage the console and the controls on the dashboard, before coming to rest on the passenger's seat.

After the shooting, Hardridge and Willingham began to head toward Kansas City. As the truck approached I-70, a Lafayette County Sherriff's deputy saw the pick-up, which matched the description of a truck central dispatch broadcast as having been involved in a shooting. The deputy pursued the truck, activating his lights and sirens. The truck did not stop, and it reached speeds in excess of one hundred miles per hour during the pursuit, at one point passing between two semis. Eventually, Willingham exited onto a winding two-lane state highway, still at times exceeding one hundred miles per hour, for another eight to ten miles. Finally, the truck was stopped by spike strips that another deputy placed on the highway, which flattened the tires of the truck. Hardridge and Willingham were

3

arrested, and a handgun was found near the truck on the ground. A criminalist from the Missouri Highway Patrol tested the handgun and concluded that the casings found in the convenience store parking lot were fired from that firearm.

Hardridge was charged with multiple offenses, including unlawful use of a weapon, section 571.030.1(9). Hardridge's counsel objected to the charge, arguing that subsection (3) of section 571.030.1 covered the exact same conduct with a lesser range of punishment, and the rule of lenity required the State to charge Hardridge under the subsection of the statute having the lower range of punishment. The trial court rejected Hardridge's argument and allowed the case to proceed on the count charged. After Hardridge was found guilty by a jury, the jury was tasked with recommending sentences for Hardridge. At the sentencing portion of the trial, evidence was admitted that Hardridge had committed two other offenses for damaging jail property while awaiting trial. Testimony was also admitted that Hardridge had been disruptive in the jail and had to be placed on lockdown several times. Finally, part of an incriminating recording of a phone call that Hardridge made to his brother while in jail was played, wherein Hardridge stated he wanted to commit "some scandalous sh*t" with his brother in the future. Hardridge's counsel did not object to the admission of any of this evidence.

Hardridge was sentenced, in accord with the jury's recommendation, to:

--Fifteen years for unlawful use of a weapon (shooting at a vehicle) (count I) and three years for the related armed criminal action charge (count II), to run concurrently;

4

--Five years for second degree assault (count III) and three years for the related armed criminal action charge (count IV), to run concurrently with each other, but consecutive to the unlawful use of a weapon above;

--Two years for unlawful use of a weapon (brandishing) (count VII), to run consecutive to counts I and III above; and

--Two years for resisting a lawful stop (count VIII), to run consecutive to counts I, III, and VII.

Thus Hardridge was sentenced to a total of 24 years of incarceration.

This appeal follows.

## Standard of Review

The first point on appeal involves an interpretation of section 571.030.1, a legal issue we review *de novo*. *State v. Rodgers*, 396 S.W.3d 398, 400 (Mo. App. W.D. 2013). The second point on appeal involves the trial court's admission of evidence of post-offense bad acts during the sentencing portion of the trial, to which Hardridge did not object to preserve the alleged error. Generally, we do not review unpreserved claims of error. *State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. banc 2020). Rule 30.20[2] allows review, at the appellate court's discretion, of "plain errors affecting substantial rights. . . when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20. "The plain language of Rule 30.20 demonstrates that not every allegation of plain error is entitled to review." *State v. Nathan*, 404 S.W.3d 253, 269 (Mo. banc 2013). Plain error

---

[2] All rule references are to the Missouri Court Rules, 2021.

review is to be used "sparingly" and should not be used to review every unpreserved claim of error, but only those where manifest injustice or miscarriage of justice is shown. *Brandolese*, 601 S.W.3d at 526.

## Section 571.030.1

Hardridge's first point on appeal is that the trial court erred in denying his motion to dismiss the count of unlawful use of a weapon, charged under section 571.030.1(9), because this provision is ambiguous and imposes a much more severe penalty than section 571.030.1(3), which criminalizes the exact same conduct, and the rule of lenity requires the statute to be construed against the State and in favor of Hardridge.

Hardridge was charged and convicted under section 571.030.1(9), which declares it unlawful for a person to knowingly "[d]ischarge[] or shoot[] a firearm at or from a motor vehicle. . . , discharge[] or shoot[] a firearm at any person, or at any other motor vehicle, or at any building or habitable structure, unless the person was lawfully acting in self-defense. . . ." Violation of subsection (9) is punishable by the maximum sentence for a class B felony, or fifteen years. Sections 571.030.9, 558.011.1(2).

Section 571.030.1(3) prohibits a person from "[d]ischarg[ing] or shoot[ing] a firearm into a . . . motor vehicle." A conviction under this subsection is a class E felony, which carries a maximum sentence of four years and the possibility of probation. Sections 571.030.8(1), 558.011.1(5).

Hardridge is not the first offender to challenge the application of these two subsections. In *State v. Barraza*, 238 S.W.3d 187, 192 (Mo. App. W.D. 2007), the defendant argued that section 571.030.1(9) was "ambiguous as to whether it covers

6

discharging a firearm between two vehicles, from a vehicle[,] or also toward a vehicle but not from another vehicle." This Court, in *Barraza*, conducted a thorough analysis of the statutory interpretation, parsing the plain meaning of the statutory language, and concluded that the statute was not ambiguous. The Court stated that Barraza's argument "conflates redundancy with ambiguity." *Id.* It noted that while subsection (9) was "perhaps not a model of draftsmanship, the statute prohibits shooting at a motor vehicle, from a motor vehicle at any other person, building or habitable structure, or from one vehicle to another vehicle," which clearly included the conduct for which Barraza was convicted. *Id.*

Subsequently, in *State v. Key*, 437 S.W.3d 264, 268 (Mo. App. W.D. 2014), this Court was asked to reconsider our holding in *Barraza*, but was "not persuaded that the statute requires reexamination." *Key* noted the doctrine of *stare decisis*, which is the policy of "adher[ing] to decided cases" and which "promotes stability in the law by encouraging courts to adhere to precedents." *Id.* at 269. It further did not find that Key's case was one where "the passage of time and the experience of enforcing a purportedly incorrect precedent may demonstrate a compelling case for changing course." *Id. Key* reaffirmed the holding of *Barraza*. *Id.* In addition, the Eastern District of this court recently reached the same conclusion regarding the alleged ambiguity in this statute in *State v. Haynes.* 564 S.W.3d 780, 786 (Mo. App. E.D. 2018).

We also see no reason to change course from our prior decisions in *Barraza, Key,* and *Haynes*. Since *Barraza*, the Missouri legislature has amended section 571.030 five times. Two of those times were after the *Key* decision. Yet in those five amendments, the legislature has not changed the relevant language in subsections 571.030.1(3) or (9). When

7

a familiar rule has received a settled judicial construction from the courts and the legislature then reenacts it, the indication is that the legislature adopted the courts' construction. *State v. Ostdiek*, 351 S.W.3d 758, 766 (Mo. App. W.D. 2011); *Bunker v. Rural Elec. Coop.*, 46 S.W.3d 641, 645 (Mo. App. W.D. 2001).

Finally, "[i]f the state has probable cause to believe that the accused committed a crime as defined by statute, the decision whether or not to prosecute and what charges to file generally rests entirely within the prosecutor's discretion." *State v. Molinett*, 876 S.W.2d 806, 809 (Mo. App. W.D. 1994). If, as Hardridge claims, either subsection of section 571.030.1 applies to Hardridge's actions, the prosecutor had discretion to charge the offense under either subsection which criminalizes his conduct. *State v. Haynes,* 564 S.W.3d 780, 786 (Mo. App. E.D. 2018). "A defendant cannot override the exercise of prosecutorial discretion by arguing that the State could have charged a different offense." *Id.* Ultimately, "[w]e must interpret and apply the laws as the legislature writes them. [A]ny argument as to the alleged unfairness of construction of a statute as written, the difficulty in obtaining relief occasioned by the wording of a statute, or the policy ramifications thereof should be addressed to the legislative and executive branches of government.*" Id.* at 787 (internal citations and quotation marks omitted). Hardridge's point one is denied.

### Post-offense bad acts

Hardridge's second point on appeal argues the trial court plainly erred in admitting testimony of Hardridge's post-offense bad acts at the sentencing portion of the trial. We

8

do not find any manifest injustice or miscarriage of justice that would warrant our exercise of discretion to review for plain error.

After the jury found Hardridge guilty, the jury returned to consider Hardridge's sentence. The State presented evidence, without objection, that Hardridge had been disruptive at the jail, had damaged jail property, and had had an incriminating telephone conversation with his brother where he said "I got some sh\*t in place," and wanted to commit "some scandalous sh\*t" in the future with his brother.

"As a general rule, the trial court 'has discretion during the punishment phase of trial to admit whatever evidence it deems helpful to the jury in assessing punishment.'" *State v. Winfield*, 5 S.W.3d 505, 515 (Mo. banc 1999) (quoting *State v. Kinder*, 942 S.W.2d 313, 331 (Mo. banc 1996)); *Shockley v. State*, 579 S.W.3d 881, 914 (Mo. banc 2019); *State v. Giles*, 601 S.W.3d 594, 597 (Mo. App. S.D. 2020). While many cases with bifurcated sentencing are capital cases, the same principles apply here, and it is well established that the purpose of having a separate penalty phase is "to permit the presentation of a broad range of evidence that is relevant to punishment but irrelevant or inflammatory as to guilt." *State v. Ervin*, 979 S.W.2d 149, 158 (Mo. banc 1998). Evidence either supporting or mitigating a criminal defendant's punishment may be presented during the penalty phase, including evidence of "the history and character of the defendant." Section 557.036.3. This evidence assists the authority recommending the sentence, here the jury, in deciding upon an "individualized determination of an appropriate punishment." *State v. Nicklasson*, 967 S.W.2d 596, 618 (Mo. banc 1998).

9

> [T]he legislature has prescribed broad ranges of punishment for various criminal offenses and has directed that, within these ranges "the court shall decide the extent or duration of sentence or other disposition to be imposed under all the circumstances, having regard to the nature and circumstances of the offense and the history and character of the defendant and render judgment accordingly." Section 557.036.1. "This statute imposes an affirmative duty upon a trial judge to undertake a case-by-case, defendant-by-defendant evaluation and to fashion an appropriate disposition. **It is the responsibility of the trial judge to impose a punishment which not only fits the crime, but which also fits the criminal."** *Thurston v. State*, 791 S.W.2d 893, 897 (Mo.App.E.D.1990).

*Bello v. State,* 464 S.W.3d 284, 291 (Mo. App. W.D. 2015) (emphasis added).

"Although evidence pertaining to criminal conduct of the defendant not resulting in conviction is relevant to the defendant's history and character, such evidence is admissible in a penalty phase only if the State proves, by a preponderance of the evidence, that the defendant engaged in the conduct alleged." *State v. Hobbs*, 504 S.W.3d 91, 94 (Mo. App. E.D. 2016). Because in this case the state called the jail personnel to testify about the subsequent acts, it was proven by a preponderance of the evidence; Hardridge also later pleaded guilty to damaging the jail property. Accordingly, if we exercised our discretion to review for plain error, there was no error, plain or otherwise.

Hardridge's point two is denied.

## Conclusion

For all of the above-stated reasons, we affirm the judgment of the trial court.

_____
Gary D. Witt, Judge

All concur

10