

# Missouri Court of Appeals

### Southern District

### In Division

STATE OF MISSOURI, )
)
    Respondent, )
) No. SD37844
 vs. )
) FILED: October 1, 2024
DEANDRE WALLS, )
)
    Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Michael J. Cordonnier, Judge

### **AFFIRMED**

A jury convicted Deandre Walls ("Defendant") on one count of unlawful use of a weapon under section 571.030.1(9) ("Count I"), two counts of armed criminal action under section 571.015 ("Counts II & IV"), one count of first-degree felony assault under section 565.050 ("Count III"), one count of first-degree burglary under section 569.160 ("Count V"), and one count of tampering with physical evidence under section 575.100 ("Count VI").[1]  In two points on appeal, Defendant contends that (1) the trial court erred in entering a judgment on Count I because the jury did not find that Defendant shot "at or from a motor vehicle" under section 571.030.1(9) and (2) the trial court erred in overruling Defendant's motion to suppress evidence

---

[1] Unless otherwise indicated, all statutory references are to RSMo 2016, including, as applicable, statutory changes effective January 1, 2017.

seized from his vehicle because law enforcement lacked probable cause to believe the vehicle had been used in the commission of a crime and did not have authority to tow the vehicle without a warrant.  Finding no merit in Defendant's points, we affirm the judgment of the trial court.

## Factual Background & Procedural History

On April 28, 2019, the occupants of a Springfield home heard gunshots and one of them stated she "saw bullets flying through the house."  One occupant was struck by a bullet.  Their neighbor also heard gunshots and "heard voices."  She walked to the end of her driveway and saw two men run from the home and stop under a streetlight.  She then saw the men turn and run toward the nearby Bass Pro Shops ("Bass Pro") store.

A patrolling Bass Pro security officer observed two men on the Bass Pro premises.  One man waved to the officer and then they left by jumping over the fence.

Rishawn Stalling, who was visiting his girlfriend nearby, reported that a man came to their back door, appeared "scared," and requested entry.  He identified the man as the defendant. When Mr. Stalling denied entry to Defendant, Defendant used a gun and "broke out the back window" and entered the residence.  After entering the residence, Defendant asked to hide and later asked to hide the gun and a hoodie in the residence.  Mr. Stalling repeatedly asked him to leave and he eventually "left on his own."

Responding police later observed Defendant climbing the fence to get back onto the Bass Pro property.  Defendant then ran near a storm drain inside the fenced area.  Another Bass Pro security officer saw Defendant briefly lean down near the opening of the drain, continue running, and hide near a rock structure.

Officer Jacob O'Quinn subsequently found Defendant hiding in the rock structure and arrested him.  Defendant was transported to police headquarters and interviewed by Detective

2

Scott Hill. Upon searching the area for evidence, Officer O'Quinn found blood droplets and a 9mm bullet on the rock structure near where Defendant was hiding and also found a 9mm handgun in the storm drain.

Detective Brian Smith processed the scene of the shooting for evidence. Detective Smith noted bullet holes in the back window and back door of the home, and 13 shell casings in the backyard. The bullet Officer O'Quinn located at Bass Pro bore the same stampings as five of the shell casings found at the scene of the shooting.

Defendant was subsequently charged with "knowingly discharg[ing] a firearm at a habitable structure" under section 571.030.1(9), a class B felony, and other related crimes.

Defendant filed several motions to suppress prior to trial, asserting that his car was illegally towed and, therefore, that the evidence obtained from his car, including the cell phones and social media accounts on the cell phones, was obtained unlawfully and thus inadmissible. With regard to the vehicle seizure, Detective Hill testified that Defendant's possessions at the jail included car keys. After speaking with Defendant regarding the keys, Detective Hill located the vehicle 0.2 miles from the scene of the alleged shooting. He observed two cell phones on the front passenger floorboard and a third cell phone in the cup holder. Detective Hill believed the cell phones were relevant to the investigation because the vehicle containing the cell phones belonged to Defendant who was arrested while hiding near the scene of the shooting, near a discarded handgun, and near a bullet that matched casings located at the scene of the shooting. Detective Hill believed the cell phones were intentionally left behind and that he had probable cause to seize the vehicle and request a "custody-tow" of the vehicle to headquarters. After receiving the executed search warrant, another detective searched the vehicle and took possession of the cell phones inside.

3

In denying the motions, the trial court stated that it was "very familiar with the circumstances under which the evidence was gathered in this case" and noted that law enforcement was "easily able to find the car located not very far from the actual crime scene, and they confirm[ed] that those keys went to that car." The trial court further noted that it was "very likely" law enforcement "could have searched the contents of the car without a warrant, but at that point they had the ability to control that evidence and keep it safe; therefore, they did seek a warrant" and the trial court had already ruled on the search of the vehicle itself by issuing a search warrant for the vehicle. The trial court ruled that law enforcement "came by the car based on reasonable probable cause" and had probable cause to search the vehicle even without a warrant but took measures to safeguard the evidence by towing the vehicle to police headquarters and acquiring a warrant.

The case proceeded to trial and the jury found Defendant guilty on all counts. The trial court sentenced Defendant to 15 years on Count I as a persistent offender, 15 years on Count II, 25 years on Count III, 25 years on Count IV, 15 years on Count V, and 1 year on Count VI, with all sentences running concurrently with each other. Defendant filed a motion for new trial asserting among many allegations of error that the trial court erred in denying his motion to suppress evidence found resulting from the illegal seizure of his vehicle. At a hearing on the motion, Defendant also asserted that he was erroneously charged in Count I under section 571.030.1(9) because Defendant did not fire a weapon at or from a motor vehicle. After the trial court denied his motion for new trial, Defendant appealed.

## Discussion

### Point One

Defendant was charged in Count I of the Amended Felony Information with the class B

felony of unlawful use of a weapon, pursuant to section 571.030, whereby the State alleged the Defendant, acting in concert with another, knowingly discharged a firearm at a habitable structure. Defendant asserts the trial court erred in sentencing him pursuant to section 571.030.1(9) in Count I because the jury did not find that Defendant discharged a "firearm at or from a motor vehicle." Defendant argues such a finding is required under this section and, in the absence of such a finding, he should have received a sentence commensurate with a violation of section 571.030.1(3).[2]

"Questions of law, including those of statutory and constitutional interpretation, are reviewed *de novo*." **Fletcher v. Young**, 689 S.W.3d 161, 164 (Mo. banc 2024) (internal quotation marks omitted). "We review all questions of law [*de novo*] without deference to the trial court." **State v. Sinks**, 652 S.W.3d 322, 335 (Mo.App. 2022). "When interpreting a statute, the primary goal is to give effect to legislative intent as reflected in the plain language of the statute. When interpreting a statute, this Court must give meaning to every word or phrase of the legislative enactment." **State v. Moore**, 303 S.W.3d 515, 520 (Mo. banc 2010) (internal citations omitted). "We particularly look to whether the language is clear and plain to a person of ordinary intelligence. Where the statutory language is unambiguous, we need not resort to statutory construction and must give effect to the statute as written." **State v. Acevedo**, 339 S.W.3d 612, 617 (Mo.App. 2011) (internal citations and quotation marks omitted).

Under section 571.030.1(9), a person commits the offense of unlawful use of a weapon if he or she knowingly "[d]ischarges or shoots a firearm at or from a motor vehicle, as defined in

---

[2] A person commits unlawful use of a weapon under section 571.031.1(3) if he or she "[d]ischarges or shoots a firearm into a dwelling house, a railroad train, boat, aircraft, or motor vehicle as defined in section 302.010, or any building or structure used for the assembling of people[.]" Unlike section 571.031.1(9), a violation of which is a class B felony, a person who violates section 571.031.1(3) shall only be guilty of a class E felony. Sections 571.031.8(1) and 571.031.9(1).

section 301.010, discharges or shoots a firearm at any person, or at any other motor vehicle, or at any building or habitable structure, unless the person was lawfully acting in self-defense[.]" Defendant argues that the phrase "[d]ischarges or shoots a firearm at or from a motor vehicle" in section 571.030.1(9) is an essential element of the offense of unlawful use of a weapon. Defendant does not dispute that the statute applies to those who discharge or shoot a firearm at or from a motor vehicle. Defendant asserts, however, that the comma immediately after the phrase "shoots a firearm at or from a motor vehicle" in the statute indicates that at least one of the following actions in this statute must also occur in addition to this action to constitute the offense. In other words, for Defendant to be charged under this section, he argues that he must "discharge or shoot a firearm at or from a motor vehicle" *and* "discharge or shoot a firearm at any person, or at any other motor vehicle, or at any building or habitable structure."

Yet the statute does not include the word "and." "In construing a statute, courts cannot add statutory language where it does not exist; rather, courts must interpret the statutory language as written by the legislature." *Peters v. Wady Indus., Inc.*, 489 S.W.3d 784, 792 (Mo. banc 2016) (internal quotation marks omitted). Section 571.030.1(9) includes the word "or" multiple times by stating that a person commits the offense of unlawful use of a weapon if he or she knowingly "[d]ischarges or shoots a firearm at or from a motor vehicle, as defined in section 301.010, discharges or shoots a firearm at any person, *or* at any other motor vehicle, *or* at any building or habitable structure. . . ." (Emphasis added.) "The disjunctive 'or' in its ordinary sense marks an alternative generally corresponding to the term 'either.'" *State v. Graham*, 149 S.W.3d 465, 467 (Mo.App. 2004). Consequently, under the plain and ordinary meaning of the statute, clear to a person of ordinary intelligence, the "or" preceding "any building or habitable structure" indicates that a person commits the unlawful use of a weapon when he or she

6

knowingly *either* discharges or shoots a firearm at or from a motor vehicle *or* discharges or shoots a firearm at a person, at any other motor vehicle, or at any building or habitable structure. *See State v. Barraza*, 238 S.W.3d 187, 192 (Mo.App. 2007).[3]

Defendant was both charged with and convicted of knowingly "discharg[ing] a firearm at a habitable structure" under Count I, which was permitted under the plain language of the statute. Defendant does not challenge the sufficiency of the evidence supporting his conviction. Accordingly, we deny Defendant's first point.

### Point Two

Defendant asserts the trial court erred in denying Defendant's motion to suppress evidence seized from his vehicle because the police did not have probable cause under the automobile exception to the warrant requirement to believe his vehicle had been used in the commission of an offense and, therefore, because he was already in custody, the police had no authority under the Fourth Amendment to seize his vehicle without a search warrant. Defendant contends that "[e]ven though police did not do an inventory search on [Defendant's] car, nothing excused the illegal seizure of [Defendant's] car and, therefore … the 'initial intrusion' was unlawful."

"This Court reviews a trial court's ruling on a motion to suppress in the light most

---

[3] *Barraza's* judicial interpretation of section 571.030.1(9) was reaffirmed in *State v. Key*, 437 S.W.3d 264, 269 (Mo. App. 2014). While this interpretation has not previously been held to specifically apply to persons who engaged in discharging or shooting a firearm "at a building or habitable structure," as previously noted in *State v. Hardridge*:

> Since *Barraza*, the Missouri legislature has amended section 571.030 five times. Two of those times were after the *Key* decision. Yet in those five amendments, the legislature has not changed the relevant language in subsections 571.030.1(3) or (9). When a familiar rule has received a settled judicial construction from the courts and the legislature then reenacts it, the indication is that the legislature adopted the courts' construction.

*State v. Hardridge*, 628 S.W.3d 244, 249 (Mo.App. 2021). Accordingly, we also reaffirm *Barraza's* interpretation.

favorable to the ruling and defers to the trial court's determinations of credibility. The inquiry is limited to determining whether the decision is supported by substantial evidence." *State v. Schroeder*, 330 S.W.3d 468, 472 (Mo. banc 2011) (internal citation omitted).

> An appellate court will only reverse a trial court's ruling on a motion to suppress if the decision is clearly erroneous. A ruling is clearly erroneous if the court is left with a definite and firm belief a mistake has been made. Upon review of a trial court's ruling on a motion to suppress, the court will consider all evidence presented at trial, as well as the evidence presented at the suppression hearing.

*State v. Hines*, 648 S.W.3d 822, 829 (Mo.App. 2022) (internal citations and quotation marks omitted).

"The question of whether a criminal defendant's constitutional rights were violated is a question of law reviewed *de novo.*" *State v. Gates*, 635 S.W.3d 854, 857 (Mo. banc 2021).

"Probable cause is a flexible, common-sense concept dealing with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *State v. Donovan*, 539 S.W.3d 57, 65 (Mo.App. 2017) (internal quotation marks omitted). "This does not demand certainty, only a fair probability that contraband or evidence of a crime will be found." *State v. Delapp*, 581 S.W.3d 156, 160 (Mo.App. 2019) (internal quotation marks omitted).

Defendant urges this court to consider that law enforcement requested an in-custody tow only to seize the vehicle and that they did not request this tow on the belief that the vehicle was used in the commission of the crime. However, this argument is unavailing as the "[s]ubjective intentions" of law enforcement officers "play no role in ordinary, probable-cause Fourth Amendment analysis." *State v. Goucher*, 580 S.W.3d 625, 634 (Mo.App. 2019) (internal quotation marks omitted).

In determining whether the trial court's finding of probable cause is supported by

8

substantial evidence we defer to the trial court's credibility determinations of the witnesses who testified at the suppression hearing and at trial. The evidence and testimony showed Defendant was arrested after he was seen climbing a fence and entering Bass Pro's property, running near a storm drain on that property where a 9mm handgun was later located inside, and hiding from law enforcement in a rock structure. Further, law enforcement found a 9mm bullet on the rock structure near where Defendant was hiding which matched five of the shell casings found at the scene of the shooting. These events all took place within 0.25 miles of Defendant's vehicle and the vehicle itself was located within 0.2 miles of the scene of the shooting. Given the proximity of the vehicle to both the scene of the shooting and the area where Defendant was arrested, the fact that Defendant did not possess a cell phone when he was arrested but did have a set of car keys, and the fact that Defendant was arrested after a manhunt culminating in his attempt to hide from law enforcement, the totality of the circumstances would indicate to a reasonably prudent individual that a fair probability existed that Defendant drove to the area with his vehicle and was attempting to get back to his vehicle before he was arrested. Thus, a fair probability existed that the vehicle was used in the commission of a crime and contained evidence of the crime for which Defendant was arrested.

Accordingly, the evidence produced at the suppression hearing and at trial, when viewed in a light most favorable to the verdict, demonstrates that a reasonably prudent person would have probable cause to believe that Defendant's vehicle was associated with, and contained evidence of, the crimes charged. Substantial evidence existed to support the trial court's denial of Defendant's motion to suppress evidence found in his vehicle, and that denial does not evince a "definite and firm belief a mistake has been made." *Hines*, 648 S.W.3d at 829. As such, the trial court did not err as a matter of law in determining that probable cause existed to support the

seizure of Defendant's vehicle.

Defendant's second point is denied.

## Decision

The trial court's judgment is affirmed.

BECKY J.W. BORTHWICK, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS