STATE of Missouri, Respondent,

v.

William CLINCH, Appellant.

No. WD 71869.

Missouri Court of Appeals,
Western District.

March 22, 2011.

580

Craig A. Johnston, Columbia, MO, for Appellant.

Shaun J. Mackelprang, Jefferson City, MO, for Respondent.

Before CYNTHIA L. MARTIN, P.J., JAMES EDWARD WELSH, and GARY D. WITT, JJ.

JAMES EDWARD WELSH, Judge.

William Clinch appeals the circuit court's judgment convicting him of first-degree murder. In his points on appeal, he claims that the court erred in overruling his motion to dismiss the case with prejudice based upon the State's bad faith in entering a *nolle prosequi* and refiling the same charges solely for the purpose of obtaining a different judge. Clinch also contends that the court erred in overruling his objection to the use of the word "imminent" in the defense of others instruction. Lastly, Clinch claims that the court erred in refusing to allow his brother to testify after his brother violated the rule excluding witnesses from the courtroom. We affirm.

The sufficiency of the evidence to support Clinch's conviction is not at issue. The victim, J.B., was married to Clinch's sister, Amanda, for five years when they divorced in August 2007. They had two daughters and one son together. Pursuant to J.B.'s and Amanda Clinch's court-approved settlement agreement, J.B. was to have supervised visitation with the children until he completed anger management and parenting classes, at which time his visitation would be unsupervised. Clinch thought that the justice system had "failed" his nieces and nephew with this arrangement because he believed that J.B. should be allowed only supervised visitation until the children turned eighteen.

Clinch thought that he should be the "primary supervisor" of the visitation.[1]

When Clinch learned on August 30, 2007, that J.B. had completed the anger management classes and, therefore, was one step closer to having unsupervised visitation with the children, he formulated a plan to kill J.B. On August 31 and September 1, 2007, Clinch took shooting lessons from his father and bought ammunition for his gun and targets to practice shooting.

On September 2, 2007, J.B. was to have a supervised visit with the children at a McDonald's restaurant in Columbia at 5:30 p.m. Clinch drove to the McDonald's about an hour before the scheduled visit, parked his car in the parking lot of a KFC restaurant that was near the McDonald's, and waited for J.B. to arrive. As he waited, Clinch became concerned that J.B. would be able to see him in his car, so he drove to Wal–Mart to buy sun shades to cover the car windows. Clinch then drove back to the KFC parking lot and watched for J.B.

The children were not there when J.B. arrived.[2] J.B. got out of his car and opened his trunk. As J.B. was reaching into his trunk, Clinch walked up to him and fired two shots at him, hitting him once in the buttocks. J.B. ran away from Clinch and cried for help. Clinch pursued him through the parking lot, firing his gun at him. The gun jammed. After clearing the jam, Clinch chased J.B. around a parked pickup truck until J.B. hid behind one of the truck's tires. When J.B. stood up, Clinch shot him in the head. Clinch

1. During J.B.'s and Amanda Clinch's separation, Clinch was initially allowed to supervise J.B.'s visits with the children. After Clinch spent several visits glaring at and attempting to intimidate J.B., however, Clinch was no longer allowed to supervise.

2. It is unclear whether Amanda Clinch ever brought the children to the McDonald's that evening for the scheduled visit. Elise Wilson, who was supposed to supervise the visit, testified that she arrived minutes after the incident and that the police detained her at the McDonald's until 8:00 p.m. Wilson said that she did not see Amanda Clinch and the children arrive at any time while she was there.

then walked around the truck to where J.B. lay and shot him two more times in the back of the head.

After shooting J.B., Clinch set the gun down and made a call on his cell phone. A Boone County Sheriff's deputy arrived shortly thereafter and arrested Clinch. Inside Clinch's wallet, law enforcement officers found receipts for ammunition and the sun shades. The officers also found a note that Clinch had written saying that no one would "ever understand why [he] did this," that J.B. was "a monster and must be destroyed," and that "[t]his final act" was his "gift" to his nieces and nephew.

Clinch was indicted for first-degree murder.[3] During the jury trial, Clinch claimed that he acted in lawful defense of others to prevent J.B. from abusing the children. Alternatively, Clinch claimed that he did not deliberate before killing J.B. because he was living in fear of J.B. and his anxiety affected his ability to coolly reflect upon what he was doing.

The jury found Clinch guilty of first-degree murder. The court sentenced him to life in prison without the possibility of parole. Clinch appeals.

■ In his first point, Clinch claims that the circuit court erred in overruling his motion to dismiss the case with prejudice based upon the State's bad faith in entering a *nolle prosequi* following the court's ruling that the defense of others instruction would not include the word "imminent." The issue concerning the wording of the defense of others instruction arose before trial when the State filed a motion *in limine* to exclude evidence of J.B.'s prior bad acts. The State said that it anticipated that Clinch would try to introduce evidence that J.B. allegedly had a violent character and had allegedly caused

harm to his children to support a defense of others claim. The State argued that such evidence was irrelevant because there was no evidence that Clinch acted to defend others from J.B.'s "imminent" commission of a forcible felony as required by the statute governing a defense of others claim, section 563.031, RSMo Cum.Supp. 2007. During a hearing on the motion, Clinch agreed with the State that he was required to prove imminence and said that he would adduce evidence that he believed that imminence of harm to the children did, in fact, exist. Nevertheless, the court sustained the State's motion *in limine* to exclude the evidence.

The day before trial, the court reconsidered this ruling and stated that it believed that the legislature's 2007 amendment of section 563.031 removed the requirement that the anticipated commission of a forcible felony be imminent. The prosecutor asked for time to review the law, and the court put off any ruling on the issue until the next day.

On the morning of trial, the State argued that the 2007 amendment of section 536.031 did not remove the requirement that the threat of the commission of a forcible felony be imminent to support a defense of others claim. The prosecutor asked the court for a ruling on whether or not the word "imminent" would be included in the defense of others instruction. The court said that it thought that the word "imminent" would not be in the instruction. The State then entered a *nolle prosequi* dismissing the charges against Clinch.

The State subsequently refiled the charges, and the case proceeded to trial. During the instructions conference, Clinch filed a motion to dismiss the case with

---

3. Clinch was also indicted for armed criminal action, but the State dismissed this charge before trial.

prejudice, arguing that the prosecutor acted in bad faith in entering the *nolle prosequi* to avoid the prior judge's ruling excluding the word "imminent" from the defense of others instruction. The court denied the motion. Clinch contends that, by not granting his motion to dismiss, the court permitted the State to "forum shop" for a favorable ruling, which is fundamentally unfair because he had no corresponding right to do so.

■ We review the circuit court's ruling on a motion to dismiss for an abuse of discretion. *State v. Keightley*, 147 S.W.3d 179, 184 (Mo.App.2004). An abuse of discretion occurs "when a ruling is clearly against the logic of the circumstances before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.*

■ "A *nolle prosequi* is a prosecutor's formal entry on the record indicating that he or she will no longer prosecute a pending criminal charge." *State v. Flock*, 969 S.W.2d 389, 389 (Mo.App.1998). The entry of a *nolle prosequi* "results in a dismissal without prejudice unless jeopardy attaches to bar subsequent prosecution." *Id.* "The general rule is that a nolle prosequi or a dismissal of a criminal charge, if made prior to the time a jury is impaneled and sworn, is not a bar to a subsequent prosecution for the same offense." *State v. Lonon*, 331 Mo. 591, 56 S.W.2d 378, 380 (1932), *overruled on other grounds by State ex rel. Norwood v. Drumm*, 691 S.W.2d 238 (Mo. banc 1985), *as stated in Doyle v. Crane*, 200 S.W.3d 581, 588 (Mo.App.2006).

In *State ex rel. Griffin v. Smith*, 363 Mo. 1235, 258 S.W.2d 590, 593 (Mo. banc 1953), the Missouri Supreme Court said that the right to enter a *nolle prosequi* "lies within the sole discretion of the prosecuting attorney." The Court explained that, because prosecutors are "charged with the responsibility and vested by law with the discretion" to investigate the facts and the law to determine when to initiate a prosecution, this discretion also gives prosecutors "the sole power to determine" when to proceed with a prosecution or to dismiss it. *Id.* at 594.[4]

The Court expressly reaffirmed this principle in the more recent case of *State v. Honeycutt*, 96 S.W.3d 85, 89 (Mo. banc 2003). In *Honeycutt*, the Court stated "that a prosecutor has broad discretion to determine when, if, and how criminal laws are to be enforced, and that this decision is seldom subject to judicial review." *Id.* (internal citations omitted). The Court in *Honeycutt* also reiterated that, once a prosecutor dismisses a case without prejudice, a court "has no authority to convert the dismissal to one with prejudice or to force the prosecutor to trial." *Id.*

Recognizing the State's broad discretion to dismiss a case and refile the charges so long as jeopardy has not attached, this district and the Southern District of this court have found no error in the State's filing a *nolle prosequi*, in lieu of an appeal, following an unfavorable ruling on a motion to suppress and then refiling the charges. *See, e.g., Keightley*, 147 S.W.3d at 183–85; *State v. Maggard*, 906 S.W.2d 845, 848 (Mo.App.1995); *State v. Pippenger*, 741 S.W.2d 710, 712 (Mo.App.1987).

The circumstances in this case do not warrant a different result.. In exercising the broad discretion that our common law affords it, the State entered its *nolle prosequi* following the court's ruling concerning the jury instructions. Jeopardy had

4. In *State v. Honeycutt*, 96 S.W.3d 85, 89 (Mo. banc 2003), the Court overruled *Griffin* but only to the extent that *Griffin* could be read to suggest that the circuit court does not have the power to dismiss a case without prejudice for failure to prosecute.

not yet attached, so it was permissible for the State to refile the charges against Clinch as it saw fit.

 Clinch acknowledges that the prosecutor's actions in this case were permissible under Missouri law concerning the State's *nolle prosequi* power. Nevertheless, he asks us to follow federal courts and state courts in other jurisdictions that limit the State's discretion by requiring the circuit court's approval before the State can *nolle prosequi* a charge and refile it later.[5] The appellant in *Keightley* made a similar request. 147 S.W.3d at 184. Like the Southern District, we decline to place such a limitation on the State's *nolle prosequi* power because "to do so would require us to ignore numerous precedents of this state, including from our supreme court." *Id.* (citing *Griffin,* 258 S.W.2d at 594 & *Lonon,* 56 S.W.2d at 380).[6] "We are constitutionally bound to follow the most recent controlling decision of the Supreme Court of Missouri." *Id.* at 184–85. We deny Clinch's first point.

 In his second point, Clinch claims that the circuit court erred in overruling his objection to the use of the word "imminent" in the defense of others instruction. During the instructions conference, the State offered the following defense of others instruction:

> One of the issues in this case is whether the use of force by the defendant against [J.B.] was lawful. In this state, the use of force, including the use of deadly force, to protect another person is lawful in certain situations.
>
> In order for a person lawfully to use force in defense of another person, such a defender must reasonably believe such force is necessary to defend the person he is trying to protect from what he reasonably believes to be the *imminent* commission of a forcible felony.
>
> But a person acting in the defense of another person is not permitted to use deadly force unless he reasonably believes the use of deadly force is necessary to protect the person against the commission of a forcible felony.
>
> As used in this instruction, "deadly force" means physical force which is used with the purpose of causing or which a person knows to create a substantial risk of causing death or serious physical injury.
>
> As used in this instruction, the term "reasonably believe" means a belief based on reasonable grounds, that is, grounds that could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appeared. It does not depend upon whether the belief turned out to be true or false.
>
> A forcible felony includes abuse of a child.
>
> On the issue of the defense of another person in this case, you are instructed as follows:
>
> First, if the defendant reasonably believed that the use of force was necessary to defend [the children] from what the defendant reasonably believed to be the *imminent* commission of abuse of a child by [J.B.], and
>
> Second, the defendant reasonably believed that the use of deadly force was necessary to protect [the children] from the commission of abuse of a child by [J.B.], then his use of deadly force is

---

5. Presently, "[t]he only limitation on the prosecutor's unfettered discretion to enter a *nolle prosequi* is the circuit court's power to deny leave to enter a *nolle prosequi* on a murder charge after a guilty verdict and before sentencing." *Flock,* 969 S.W.2d at 389 n. 1 (citing *Norwood,* 691 S.W.2d 238).

6. We would add *Honeycutt,* 96 S.W.3d at 89, to this list.

justifiable and he acted in lawful defense of another person.

The state has the burden of proving beyond a reasonable doubt that the defendant did not act in lawful defense of another person. Unless you find beyond a reasonable doubt that the defendant did not act in lawful defense of another person, you must find the defendant not guilty.

As used in this instruction, the term "abuse of a child" means knowingly inflicting cruel and inhuman punishment upon a child less than seventeen years old, and in the course thereof the person inflicts serious emotional injury on the child.

As used in this instruction, the term "serious emotional injury" means an injury that creates a substantial risk of temporary or permanent medical or psychological damage, manifested by impairment of behavioral, cognitive, or physical condition.

Evidence has been introduced that [J.B.] had a reputation for being violent and turbulent, and that the defendant was aware of that reputation. You may consider this evidence in determining whether the defendant reasonably believed that the use of force was necessary to defend [the children] from what he reasonably believed to be the *imminent* commission of abuse of a child by [J.B.]

Evidence has been introduced of the prior relationship between defendant and [J.B.] including evidence of arguments and acts of violence. You may consider this evidence in determining whether the defendant reasonably believed that the use of force was necessary to defend [the children] from what he reasonably believed to be the *imminent* commission of abuse of a child by [J.B.]

Evidence was been introduced of acts of violence not involving the defendant committed by [J.B.] and that the defendant was aware of these acts. You may consider this evidence in determining whether the defendant reasonably believed that the use of force was necessary to defend [the children] from what he reasonably believed to be the *imminent* commission of abuse of a child. You may not consider this evidence for any other reason.

You, however, should consider all of the evidence in the case in determining whether the defendant acted in defense of others.

(Emphasis added.) This instruction tracked MAI–CR3d 306.08A (2009). Clinch objected to the inclusion of the word "imminent" in the instruction, but the court overruled the objection. Clinch raised the issue again in his motion for new trial, which the court denied. On appeal, Clinch claims that instruction was erroneous because the defense of others statute, section 563.031, as amended in 2007, does not require a reasonable belief that the commission of a forcible felony is "imminent."

■ Whether or not the court properly instructed the jury is a question of law, which this court reviews *de novo*. *State v. Richards*, 300 S.W.3d 279, 281 (Mo.App. 2009). Clinch's contention that the approved instruction conflicts with section 563.031 requires us to interpret that statute. The interpretation of a statute is also a question of law to be reviewed *de novo*. *State v. Barraza*, 238 S.W.3d 187, 192 (Mo. App.2007). " 'The primary rule of statutory interpretation is to effectuate legislative intent through reference to the plain and ordinary meaning of the statutory language.' " *Id.* (quoting *State v. Graham*, 204 S.W.3d 655, 656 (Mo. banc 2006)). " 'To determine whether a statute is clear

and unambiguous, this court looks to whether the language is plain and clear to a person of ordinary intelligence.' " *State v. Goddard,* 34 S.W.3d 436, 438 (Mo.App. 2000) (citation omitted). If the language of the statute is open to more than one reasonable interpretation, then the statute is ambiguous. *Barraza,* 238 S.W.3d at 192. " 'Where the statutory language is unambiguous, we need not resort to statutory construction and must give effect to the statute as written.' " *State v. Graham,* 149 S.W.3d 465, 467 (Mo.App.2004) (citation omitted).

Section 563.031 sets forth the parameters for the use of non-deadly and deadly force in self-defense and in defense of others. The 2007 version of section 563.031, which was the version of the statute in effect at the time of Clinch's crime, says, in pertinent part:

1. A person may, *subject to the provisions of subsection 2 of this section,* use physical force upon another person when and to the extent he or she reasonably believes such force to be necessary to defend himself or herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful force by such other person.... [7]

2. A person may not use deadly force upon another person *under the circumstances specified in subsection 1 of this section* unless:

(1) He or she reasonably believes that such deadly force is necessary to protect himself or herself or another against death, serious physical injury, or any forcible felony; or

(2) Such force is used against a person who unlawfully enters, remains after unlawfully entering, or attempts to unlawfully enter a dwelling, residence, or vehicle lawfully occupied by such person. (Emphasis added.)

The italicized portions of the statute indicate that, to determine when deadly force may be used in defending others, subsections 1 and 2 must be read together. Subsection 1 is the broader section and governs all use of physical force in self-defense and in defense of others, "subject to" the prohibition on deadly force in subsection 2 except under certain conditions. § 563.031.1. Subsection 2 prohibits the use of deadly force "under the circumstances" set out in subsection 1, except when the additional conditions listed in subparagraphs (1) and (2) of subsection 2 are met. § 563.031.2.

Thus, under the plain language of the statute, any use of physical force in defense of others under subsection 1 is not necessarily qualified by subsection 2, because subsection 2 applies only in certain circumstances. All use of deadly force as set forth in subsection 2, however, is qualified by subsection 1. This means that, to use deadly force under subsection 2, the requirements of subsection 1 must also be met; otherwise, deadly force is prohibited. § 563.031. Because subsection 1 always requires a reasonable belief in either the use or imminent use of unlawful force to justify the use of physical force in defense of others, subsection 2 also requires a reasonable belief in either the use or imminent use of unlawful force to justify the use of deadly force in the specific enumerated circumstances, including in the defense of others to protect them from a forcible felony under subsection 2(1).

Despite the statute's plain language, Clinch contends that, when the legislature amended section 563.031 in 2007, it intended to broaden the justification defense to

---

**7.** The omitted material lists exceptions that are not relevant in this case.

remove the imminence requirement in certain circumstances. Before the 2007 amendments, the relevant portions of section 563.031, RSMo 2000, read:

> 1. A person may, *subject to the provisions of subsection 2 of this section,* use physical force upon another person when and to the extent he reasonably believes such force to be necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful force by such other person.... [8]
>
> 2. A person may not use deadly force upon another person *under the circumstances specified in subsection 1* of this section unless he reasonably believes that such deadly force is necessary to protect himself or another against death, serious physical injury, rape, sodomy or kidnapping or serious physical injury through robbery, burglary or arson.

(Emphasis added.)

The relevant portions of the prior version of the statute qualifying the use of deadly force under subsection 2 upon the satisfaction of the conditions in subsection 1—including a reasonable belief in the use or imminent use of unlawful force—read exactly the same as the 2007 version.[9] § 563.031, RSMo 2000, and § 563.031, RSMo Cum.Supp.2007. Courts of this state, including the Missouri Supreme Court and this court, interpreted the prior version of section 563.031 as requiring, for the use of deadly force, a showing of "a real or apparently real necessity for the defender to kill in order to save himself [or another] from *an immediate danger of* serious bodily injury or death." *State v.*

*Thomas,* 161 S.W.3d 377, 379 (Mo. banc 2005) (emphasis added). *See, e.g., State v. Pounders,* 913 S.W.2d 904, 907–08 (Mo. App.1996); *State v. Dale,* 874 S.W.2d 446, 449–50 (Mo.App.1994).

■ We presume that the legislature was aware of the courts' interpretation of the prior version of section 563.031. *See In re C.D.G.,* 108 S.W.3d 669, 675–76 (Mo. App.2002). Likewise, we presume that, because the legislature left the relevant language of the prior version of the statute intact in the 2007 amendment, the legislature intended to preserve the prior interpretation of section 563.031. *See id.* Therefore, under both the prior version of section 563.031 and the 2007 amended version of the statute, for a person to be justified in using deadly force to protect others from the commission of a forcible felony, the person must reasonably believe that the felony is actually occurring or is imminent.

Nevertheless, Clinch argues that continuing to require imminence to justify the use of deadly force as set forth in subsection 2 of section 563.031 would be contrary to the "spirit" behind the 2007 amendment, because the 2007 amendment also added the so-called "castle doctrine" defense in subsection 2(2). Clinch contends that the legislature did not intend that a reasonable belief in "the use or imminent use of unlawful force" be a prerequisite to defend one's premises under the "castle doctrine"; thus, the legislature also did not intend that a reasonable belief in "the use or imminent use of unlawful force" be a pre-

---

**8.** The omitted material lists exceptions that are not relevant in this case.

**9.** The only relevant substantive change that the 2007 amendment made was to substitute the term "forcible felony" for the specific felonies justifying the use of deadly force and then define the term "forcible felony" in section 563.011(3) to mean "any felony involving the use or threat of physical force or violence against any individual, including but not limited to murder, robbery, burglary, arson, kidnapping, assault, and any forcible sexual offense."

requisite to defend one's self or others from a forcible felony.

■ This is clearly not a defense of premises case; thus, we need not discern the legislature's intent regarding the interaction between subsection 1 and subsection 2(2) of section 563.031. Nevertheless, we agree with the circuit court's conclusion that the "castle doctrine," as set forth in subsection 2(2), did not eliminate the requirement of a reasonable belief in the use of actual or imminent unlawful force but merely codified that the unlawful entry into a dwelling, residence, or vehicle constitutes the act of force necessary to justify deadly force. Because actual unlawful force was used to gain entry in such a situation, no further requirement of imminence would be necessary to justify the use of deadly force.

■ Finally, Clinch argues that the approved instruction, MAI–CR3d 306.08A, permits the word "imminent" to be excluded when defending against the commission of a forcible felony. Clinch notes that Part A[2] of MAI–CR3d 306.08A says that a person may use deadly force to defend others only "to protect from what he reasonably believes to be the ... ((imminent) commission of a forcible felony)." Because the word "imminent" is in parentheses, Clinch contends that it can be eliminated when defending against the anticipated commission of a forcible felony. We disagree. The only time that the word "imminent" can be eliminated is if the defensive force is used during the *actual* commission of a forcible felony. MAI–CR3d 306.08A properly requires a reasonable belief in either the actual commission or the imminent commission of a forcible felony before deadly force can be used.

The court's instruction in this case complied with MAI and was consistent with the substantive law. Section 536.031, as amended in 2007, required the jury to find that Clinch reasonably believed that deadly force was necessary to protect his nieces and nephew from what he reasonably believed to be the imminent commission of a forcible felony. Therefore, the court did not err in including the word "imminent" in the defense of others instruction. We deny Clinch's second point.

■ In his third point, Clinch claims that the circuit court erred in refusing to allow his brother to testify after his brother violated the rule excluding witnesses from the courtroom. The State invoked the rule excluding witnesses at least twice before the presentation of any evidence at trial. The court informed the prosecutor and defense counsel that they would need to keep track of their witnesses and announced to those present in the courtroom that anyone who was a witness needed to leave the courtroom and not reenter until called.

On the fourth day of trial, Clinch called his brother to testify in his defense. The State objected on the basis that Clinch's brother had been present in the courtroom during the trial. Defense counsel claimed that the defense learned that Clinch's brother had relevant testimony only after another family member told counsel that a receipt found in Clinch's car belonged to Clinch's brother and not to Clinch. The receipt showed the purchase of ammunition two weeks before the murder. Defense counsel claimed that, at that point, he spoke to Clinch's brother and removed him from the courtroom. Defense counsel also claimed that Clinch's brother had been present in the courtroom only one day. When the prosecutor pointed out that the receipt was disclosed to the defense over two years before trial, defense counsel admitted that it was disclosed but argued that this was a case with "well over 2000 pages of discovery."

---

589

The court rejected defense counsel's argument, ruling:

> I'm going to sustain the objection to him testifying. He's been sitting in the courtroom. I've been seeing him sit in the courtroom. This issue that's before the Court, this is something that's just an obvious open issue and you decided to have him in the courtroom, and he's not going to testify.

When defense counsel argued that he should be allowed to present Clinch's brother's testimony about the receipt because the prosecutor had "made a great deal of significance out of" it, the court responded:

> It actually speaks to the issue. If he's made such a big deal out of it, you should have been paying attention to the fact of it. You had this guy in the courtroom, and you haven't done a darn thing about it. And you can't have your cake and eat it too. I'm going to sustain the objection. He will not testify.

The circuit court may order the exclusion of witnesses from the courtroom so that they will not be privy to other witnesses' testimony. *State v. Jones*, 134 S.W.3d 706, 715 (Mo.App.2004). " 'The remedy or sanction available to a court for violation of "the rule" is to disqualify the offending witness from testifying.' " *Id.* (citation omitted). The court should not impose this sanction automatically, however, but only "where there is proof that the witness violated the rule with 'the consent, connivance or procurement of the party or counsel calling him.' " *Id.* (citations omitted). The decision to exclude the testimony of a witness who has violated "the rule" lies within the circuit court's sound discretion. *Id.* We will reverse only if we find that the court has abused its discretion and that the defendant has demonstrated prejudice. *State v. Johnson*, 207 S.W.3d 24, 40 (Mo. banc 2006).

The court's statements indicate that it believed that Clinch's brother violated the rule with the defense's consent. Although defense counsel seemed to argue that, due to the volume of discovery in the case, the defense had either not reviewed the receipt or not appreciated its significance before trial, the record shows that defense counsel was, in fact, aware of the receipt and its significance. On the first day of trial, defense counsel cross-examined the State's witness who seized the receipt about the fact that the credit card numbers on the receipt did not match any of the credit cards found in Clinch's wallet. This shows that the defense knew about the receipt and knew that the defense's position was that the receipt was not Clinch's. Based upon this, the court could have reasonably concluded that the defense had determined the receipt's owner and, therefore, knew that Clinch's brother had relevant testimony but consented to his sitting in the courtroom anyway. The court did not abuse its discretion in refusing to allow Clinch's brother to testify.[10] We deny Clinch's third point.

We affirm the circuit court's judgment convicting Clinch of first-degree murder.

All concur.

---

10. Furthermore, we note that Clinch was not prejudiced by the court's decision to exclude his brother's testimony about the receipt. Both Clinch and his sister testified that it was their brother, and not Clinch, who purchased the ammunition referenced in the receipt. The testimony of Clinch's brother about the receipt would have been merely cumulative.